UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

12 -- CV       5899

---------------------------------------------------------------

A.L. and V.R., individually and on behalf of E.L.,     :

                                            Plaintiffs,     :

                  -against-     :

                                              :

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,     :

                                 Defendant.

--------------------------------------------------------------- X

**COMPLAINT**

ECF Case

        Plaintiffs A.L. and V.R., individually and on behalf of their minor child,

E.L., by their attorneys, the Law Offices of Lauren A. Baum, P.C., as and for their

Complaint herein allege as follows:

**PRELIMINARY STATEMENT**

        1.      Defendant, the New York City Department of Education ("DOE"),

is required to provide a free and appropriate public education ("FAPE") to every

New York City resident student with a disability.  Defendants failed to provide a

FAPE to Plaintiff E.L. for the 2011-2012 school year.  As a result, Plaintiffs A.L.

and V.R., Plaintiff E.L.'s parents, were forced to secure a seat at an appropriate

private school for Plaintiff E.L. to attend for the 2011-2012 school year.  Plaintiffs

A.L. and V.R. now bring this action seeking to require Defendant to pay the cost

of providing Plaintiff E.L. with a FAPE for the 2011-2012 school year.  Pursuant

to the Individuals with Disabilities Education Improvement Act of 2004

("IDEA"), parents may be entitled to reimbursement for the cost of private

1

education and services where the school district fails to provide FAPE.  20 U.S.C.

§  1412(a)(10)(c)(ii); 20 U.S.C. § 1415(i)(2)(c)(iii); <u>Burlington Sch. Comm. v.</u>

<u>Massachusetts Dep't of Educ.</u>, 471 U.S. 359 (1986); <u>Florence County Sch. Dist.</u>

<u>Four v. Carter</u>, 510 U.S. 7 (1993).

## <u>JURISDICTION</u>

2.      This Court has jurisdiction to entertain this action pursuant to 28

U.S.C. § 1331 in that claims are asserted pursuant to the Constitution and laws of

the United States; pursuant to 20 U.S.C. § 1343(a) in that claims are asserted

pursuant to laws providing for the protection of civil rights; and pursuant to 20

U.S.C. § 1415(i)(2) & (3).

3.      If successful, Plaintiffs are entitled to costs and attorneys fees

under 20 U.S.C. § 1415(i)(3) and 29 U.S.C. § 794a.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events or omissions giving rise to Plaintiffs' claims

occurred in this district.

5.      Plaintiffs A.L. and V.R. disagreed with the recommendations of

Defendant's Committee on Special Education ("CSE") for Plaintiff E.L. for the

2011-2012 school year.  As a result, as more fully set forth below, on or about

June 30, 2011, Plaintiffs A.L. and V.R. filed a due process complaint commencing

the underlying impartial hearing which gave rise to this matter.

6.      On or about July 27, 2011, Plaintiffs A.L. and V.R. filed an

amended due process complaint in this matter, which was accepted.

6.      The underlying impartial hearing occurred over five (5) days:
September 23, November 16, December 16, December 20, and December 22,
2011

7.      The impartial hearing resulted in findings of fact and a decision
dated January 30, 2012, whereby the Impartial Hearing Officer ("IHO")
determined that the DOE had offered Plaintiff D.P. a FAPE for the 2011-2012
school year and denied Plaintiffs' request for tuition reimbursement for E.L.'s
placement at the McCarton School ("McCarton") for the 2011-2012 school year.
[Attached hereto as Exhibit "A" is a copy of the Findings of Fact and Decision of
IHO Judith Schneider, Esq., Case No. 133658, dated January 30, 2012.]

8.      The portion of the IHO's findings of fact and decision denying
Plaintiffs' claim for tuition reimbursement was not supported by the testimony
and other evidence in the record.

9.      Plaintiffs appealed the portion of the IHO's findings of fact and
decision denying their request for reimbursement for the costs of Plaintiff E.L.'s
placement and attendance at McCarton for the 2011-2012 school year to the State
Review Officer ("SRO") for the New York Department of Education, alleging
that the IHO erred in determining that Defendant provided E.L. with a FAPE for
the 2011-2012 school year, and claiming that Plaintiffs A.L. and V.R.'s placement
of E.L. at McCarton for the 2011-2012 school year was appropriate, and that
equitable considerations supported an award of tuition reimbursement for E.L.'s

3

tuition at McCarton.

10.     The appeal to the SRO resulted in a decision dated May 4, 2012, whereby the SRO found that the IHO had correctly determined that Defendant met its burden to prove that it had offered a FAPE to Plaintiff E.L. for the 2011-2012 school year.  The SRO did not issue any determinations regarding whether Plaintiffs A.L. and V.R. met their burden to prove that McCarton constituted an appropriate placement for Plaintiff E.L., or whether their claims were supported by equitable considerations. [Attached hereto as Exhibit "B" is a copy of the Decision of the SRO, Application of a Student with a Disability, No. 12-047, dated May 4, 2012].

11.     The SRO's decision improperly dismissed Plaintiffs' appeal and sustained the finding of the IHO that Defendant offered Plaintiff E.L. a FAPE for the 2011-2012 school year.

12.     Plaintiffs bring this action seeking to overturn the SRO's decision finding that Defendant met its burden to prove that it offered Plaintiff E.L. a FAPE for the 2011-2012 school year and denying Plaintiffs' claims for reimbursement for the cost of E.L.'s tuition in connection with Plaintiff E.L.'s enrollment and attendance at McCarton for the 2011-2012 school year.  Plaintiffs also seek their costs, attorneys' fees, and related relief.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13.     Plaintiffs pursued this matter through the impartial hearing process and the IHO rendered a decision in this matter.  Plaintiffs appealed that IHO's

4

decision to the SRO, and the SRO issued a decision regarding the matter. Plaintiffs have thus exhausted the administrative process precedent to the filing of this claim.

## PARTIES

14.     Initials are used throughout this Complaint to preserve the confidentiality of the infant Plaintiff in conformity with the privacy provisions of the IDEA, codified at 20 U.S.C. § 1417(c), and with the Family Educational Right to Privacy Act ("FERPA"), codified at 20 U.S.C. § 1232(g).

15.     Plaintiffs A.L. and V.R. are the parents of Plaintiff E.L., a student with a disability.  Plaintiffs all reside within the City of New York in New York County.

16.     E.L. was approximately fifteen years old at the time of the underlying impartial hearing that gave rise to this action and has been properly classified by Defendant as a student with a disability, specifically autism.

17.     Defendant is a local educational agency as defined by the IDEA, pursuant to 20 U.S.C. § 1402(19), and, as such, is obligated to provide educational and related programs and services to the students in its jurisdiction in compliance with applicable federal and state statutes and regulations, as well as the United States Constitution, and is subject to the requirements of 20 U.S.C. § 1400, et. seq., 29 U.S.C. § 794, 42 U.S.C. § 12101, et. seq., and the regulations promulgated thereunder.

## OVERVIEW OF APPLICABLE FEDERAL LAW

18.     Congress enacted the IDEA to ensure that students with disabilities are provided with meaningful access to public education.  States who participate in the IDEA receive substantial federal funds in exchange for their agreement to provide a FAPE to all disabled children in the state and to comply with the IDEA's procedural and substantive mandates.

19.     New York has chosen to participate in the IDEA framework and has established procedures for providing special educational services to children with disabilities. N.Y. Educ. Law § 4401, et. seq.

20.     The primary mechanism for ensuring implementation of the IDEA's mandate to provide students with a FAPE is the Individualized Education Program ("IEP").  An IEP is a written statement, prepared for every child with a disability, which describes the child's present levels of performance and provides a roadmap for the child's progress.  The IEP sets forth the special education and related services, supplementary aids and services, and program modifications or support for school personnel, that will be provided for the particular child in order to enable that child to achieve a comprehensive set of annual goals and short term objectives.

21.     The IDEA requires that school districts offer a FAPE, which is an education that has been provided at public expense, meets the standards of the state education agency, and is provided in conformity with the IEP. 20 U.S.C. § 1401(9).

22.     When a district fails to offer a FAPE to a student and the parents

6

unilaterally place the student at an appropriate private school, the school district may be required to reimburse the student's parents for the cost of the student's placement and attendance at the private educational placement. 20 U.S.C. § 1412(a)(10)(C)(ii); 20 U.S.C. § 1415(i)(2)(C)(iii); <u>Burlington Sch. Comm. v. Massachusetts Dep't of Educ.</u>, 471 U.S. 359 (1986); <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7 (1993).

23.     During the pendency of any proceedings under the IDEA, "the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." 20 U.S.C. § 1415(j).

## FACTUAL ALLEGATIONS

### Background

24.     Plaintiff E.L. was born on July 11, 1996.  At all relevant times, E.L. has resided within Defendant's school district, has been classified as a student with a disability, and has had an IEP.

25.     E.L has "significant educational and adaptive behavior challenges."

26.     E.L. engages in negative and off-task behaviors, such as taping and rubbing parts of his body and producing non-contextual vocalizations, which interfere with his ability to focus and attend in the classroom.

27.     E.L has significant expressive, receptive, and pragmatic language deficits.

28.     He has sensory processing ,self-regulation, gross motor, fine motor, motor planning, and graphomotor issues.

7

29.    Given his significant educational and behavioral issues, E.L.

requires 1:1 instruction using an Applied Behavior Analysis ("ABA")

methodology in order to make appropriate progress.

**Defendant Failed to Comply with Procedural Requirements in Developing an**
**IEP for E.L. for the 2011-2012 School Year**

30.    A Committee on Special Education ("CSE") review meeting was

held on May 19, 2011 to develop an IEP for E.L. for the 2011-2012 school year.

31.    Plaintiff V.R. attended this meeting, and E.L.'s then-current

teacher, SL and OT therapists, a Board Certified Behavioral Analyst ("BCBA"),

and Dr. Peter Gerhardt, McCarton's Upper School Director, participated by

telephone from McCarton.

32.    The CSE continued E.L.'s classification as a student with autism

and recommended placement in a special class in a specialized school with a

staffing ratio of 6:1:1, as well as SL (4 x 45 minutes per week individually), OT (5

x 45 minutes per week individually), counseling (2 x 45 minutes per week in a

group of two), and the services of an individual, full-time behavior management

paraprofessional, all on a twelve-month basis.

33.    The CSE failed to fully evaluate E.L. in all areas of suspected

disability prior to the May 19, 2011 CSE meeting. The CSE also failed to discuss

or review sufficient, current evaluative and documentary material at the CSE

meeting in developing E.L.'s 2011-2012 IEP. 34 C.F.R. §§ 300.305, 300.324; 8

N.Y.C.R.R. 200.4(f)(1).

34.     The record demonstrates that the CSE based its recommendations primarily upon the McCarton IEP and behavioral program as well as SL and OT progress reports from E.L.'s McCarton therapists and the input from the individuals who participated telephonically from McCarton.

35.     Not all of the participants from McCarton participated throughout the entire meeting.

36.     The record demonstrates that the CSE team did not conduct any evaluations in preparation for this meeting, including assessments of E.L.'s related service needs and behavioral needs, and that it also did not conduct or review a social history, or review any medical documentation.

37.     Although the CSE recommended SL and for E.L. for the 2011-2012 school year, the CSE failed to conduct or review any SL or OT standardized testing or assessments prior to making these recommendations.

38.     The classroom observation relied on by the team was conducted more than five moths prior to the May 19, 2011 meeting and nine months prior to the beginning of the 2011-2012 SY by a DOE employee who was not in attendance at the meeting.

39.     Furthermore, despite E.L.'s significant behaviors and their impact on his functioning in the educational environment, the CSE team improperly developed a Behavior Intervention Plan ("BIP") for E.L. without conducting or reviewing a functional behavioral assessment ("FBA").

40.     The CSE thus lacked adequate information about the nature and

extent of E.L.'s problem behaviors and the procedures or interventions that would be necessary to reduce their effect in developing E.L.'s 2011-2012 IEP and the BIP included in that IEP.

41.     Accordingly, the CSE failed to fully evaluate E.L. in all areas of suspected disability and failed to fully and adequately review or consider sufficient, current appropriate evaluative material so as to have a full and accurate understanding of E.L.'s abilities and needs in developing the May 19, 2011 IEP.

42.     The CSE team also failed to provide the parent and the individuals who participated in the meeting from McCarton with a full and meaningful opportunity to participate in the meeting.

43.     Upon information and belief, the BIP was drafted subsequent to the meeting without a FBA or any input from E.L.'s teachers, service providers, or his parent.

44.     The parent was not shown or given a copy of the meeting minutes following the meeting.

45.     The parents were not given a copy of the IEP at the meeting; instead, it was not mailed to them until June 28, 2011.

**Defendant's Procedural Errors In Conducting the March 19, 2011 CSE Meeting and in Developing E.L.'s IEP Resulted in a Substantively Inadequate IEP for E.L. for the 2011-2012 School Year and in a Denial of FAPE**

46.     The CSE's failure to fully evaluate E.L., to consider sufficient, current, appropriate evaluative and documentary material, and to provide all

10

meeting participants with a full and meaningful opportunity to participate in the meeting resulted in a substantively inappropriate IEP that failed to appropriately reflect or address E.L.'s needs for the 2011-2012 school year, and thus in a denial of FAPE.

47.    The May 19, 2011 IEP is not reasonably calculated to provide Plaintiff E.L. with meaningful educational and social/emotional benefit and to avoid regression.

48.    The 6:1:1 staffing ratio recommended for E.L. was inappropriate for him.

49.    Dr. Gerhardt testified that E.L. requires significant one-on-one attention to maintain focus and prevent becoming lost in the lesson.

50.    A paraprofessional would not be appropriately trained to address E.L. unique needs.

51.    The IEP fails to adequately or accurately describe E.L.'s present levels of performance and needs.

52.    Ms. Garofalo-Berger, the social work present at the May 19, 2011 meeting, admitted that the team based the academic functional levels included in the IEP estimates from McCarton, rather than on any standardized testing, in violation of legal requirements. 34 C.F.R. pt. 300, Appx. A.

53.    Janet Sencion, the teacher of the class allegedly offered to E.L. for the 2011-2012 SY, testified that she conducts standardized tests assessments on her students when they enter her class to determine their functional levels in

multiple areas, however, the sufficiency of an IEP should be assessed at the time it is developed, a recommended placement could correct deficiencies with the IEP is irrelevant.

54.     Despite the fact that Ms. Garofalo-Berger testified that the goals contained in the IEP were given to the CSE by McCarton, the goals were designed to be implemented with primarily one-on-one teaching support using an ABA methodology.

55.     Despite the fact that E.L. was not receiving counseling at the time of the CSE meeting and no documentation reviewed by the CSE which would support a recommendation for counseling, the IEP includes a counseling mandate for E.L.

56.     Counseling is inappropriate for E.L. and, given his speech and language and developmental delays, would not provide him with any meaningful benefit.

57.     The IEP also fails to include an appropriate BIP to address E.L.'s inappropriate, "interfering behaviors."

58.     The BIP included fails to adequately, appropriately, or sufficiently describe E.L.'s problem behaviors, to provide hypotheses as to why those behavior occur, and to propose appropriate intervention strategies to address those behaviors.

59.     Dr. Gerhardt testified that the CSE's failure to include the "frequency, duration, and likely function of [E.L.'s] behaviors" in his BIP was

"inappropriate" and "unethical." Ms. Garofalo-Berger concurred that these factors are important to know when drafting a BIP.

60.     Furthermore, the transition plan included in the IEP is also insufficient to address E.L.'s needs for transition planning for life after high school.

61.     No Diploma Objective is included in the transition plan.

62.     The IEP did not include a plan to facilitate E.L.'s transition from his 1:1 ABA program at McCarton to the DOE's 6:1:1 program, which did not employ the ABA methodology, despite the CSE's knowledge of E.Z.'s difficulty with transitions, and that, in the past, E.L. has had behavioral outbursts following changes in his routine.

63.     Dr. Gerhardt testified that E.L. would require a transition plan to make such a move.

**Defendant Failed to Recommend an Appropriate Placement for Plaintiff E.L. for the 2011-2012 School Year**

64.     The CSE offered E.L. a placement in a 6:1:1 special class in a specialized District 75 school at P79 @ The Horan School for the 2011-2012 school year.

65.     The record demonstrates that Defendant failed to meet its burden of proof regarding the appropriateness of P79 for E.L. for the 2011-2012 school year.

66.     The DOE has failed to demonstrate that it offered an appropriate

program to E.L. since it has presented no evidence regarding the appropriateness of its program for the mandatory 10-month SY commencing in September 2011, which upon information and belief, differs from the July 2011 class and program defended during this hearing.

67.     Defendant's burden is not limited to demonstrating the appropriateness of its program as of the first day of school in July 2011.

68.     The program allegedly offered to E.L. was not a continuous twelve-month program, but included distinct components for Summer and Fall semesters.

69.     Where programs for Summer and Fall are materially different, the DOE has an obligation to demonstrate the appropriateness of both programs to sustain its burden of proof on Prong I.

70.     Ms. Sencion, the teacher of the class at P79, which the DOE alleged E.L. would be placed in for the Summer of 2011, testified that she did not teach this class during the Fall semester.

71.     Mildred Ortiz, P79's Assistant Principal, testified that all of Ms. Sencion's students and most of the paraprofessionals in her classroom changed in September 2011.

72.     Stacy Minondo, the Director of Placement for District 75, stated that it would be important for a student such as E.L., who has difficulty with transitions and disruptive behaviors, to have a consistent class and group of teachers throughout the entire twelve-month SY.  She also stated that she would

never intentionally place E.L. in a class that would have such significant change.

73.    Moreover, there is no evidence that E.L. would have been placed in Ms. Sencion's class even during the Summer of 2011. She testified that her supervisor, Ms. Ortiz, communicated to her that he would be, however, Ms. Ortiz testified that this was not true and that E.L. would only appear on a class roster if his parents had accepted placement at P79.

74.    Moreover, the record demonstrates that the class and program defended by the DOE would not have been appropriate for E.L.

75.    The offered class also would not have provided E.L. with sufficient individual support from a trained teacher in the classroom.

76.    Ms. Sencion's class had two classroom paraprofessionals and one individual paraprofessional assigned to a specific student in her class during the Summer of 2011. She could not recall specifics about the paraprofessionals' educational backgrounds except to say that she "thinks" one of them had "some college."

77.    E.L. requires one-on-one support from a teacher trained to address his unique needs.

78.    Ms. Sencion testified that she spent half the day working one-on-one with students, which left the paraprofessional to deliver a significant amount of instruction.

79.    The offered class also would not have provided E.L. with a similarly functioning or appropriate peer group or with appropriate instruction.

15

80.     Ms. Sencion testified that there was a wide range of abilities in her classroom, as the students functioned from a kindergarten to a sixth grade level in reading, writing, and math.

81.     The students in Ms. Sencion were aged eleven to fourteen.  E.L. turned fifteen just days into the 2011-2012 SY.

82.     Ms. Minondo testified that state regulations require no more than a 36-month age range in a class with a 6:1:1 ratio.

83.     The teaching methodology used in Ms. Sencion's class during the Summer of 2011 would have been inappropriate for E.L.

84.     Despite the fact that she is not Treatment and Education of Autistic and Related Communication-Handicapped Children ("TEACCH") certified, Ms. Sencion testified that had a "TEACCH classroom."

85.     E.L. was taught using ABA during the 2011-2012 SY, he made progress using this methodology, and had failed to make progress in the past when he was taught using the TEACCH methodology.

86.     Ms. Minondo acknowledged that TEACCH and ABA were not the same approach.

87.     Dr. Gerhart testified that TEACCH would not allow E.L. to improve on his current skill levels and that the "research body is fairly limited in terms of TEACCH."

88.     Defendant also failed to establish that the offered placement would have appropriately addressed E.L.'s behavioral issues, particularly given the

inadequacy of the BIP included in the May 2011 IEP, the severity of E.L.'s behavioral issues, and the insufficient level of support available from trained teachers in the offered class.

89.     The record also demonstrates that the offered placement could not have fulfilled E.L.'s related service mandates as written.

90.     Ms. Ortiz testified that P79 was has had trouble fulfilling its students' related serviced mandates, particularly OT, for the past several years.

91.     Two of P79's OT providers left the school in September.

92.     The record also demonstrates that the offered placement would not have had sufficient staff to provide E.L.'s related services according to his IEP mandates and during his school day.

93.     The Special Education Services Delivery Report for this program found on Defendant's website indicated that almost 37% of students mandated for OT during the 2010-2011 school year were still awaiting services as of May 20, 2011. When questioned about this report during the impartial hearing, Ms. Ortiz testified that she had seen it and acknowledged that the school had had difficulty during the past several years fulfilling its students' mandates.

94.     While Ms. Ortiz testified that related service authorizations ("RSAs") are issued every year to students so that they could receive their services outside of school due to the inability of the offered placement to provide the services to them during their school day, she could not verify that those RSAs were actually fulfilled. Ms. Ortiz's testimony thus called into question P721M's

17

ability to appropriately implement E.L.'s IEP during the 2011-2012 school year.

95. E.L. requires his related services to be provided at school during the school day with coordination of teachers, staff, and service providers.

96. If a RSA was issued, it would be up to the individual provider to contact P79 in order to discuss the student's program, needs, and progress.

97. P79 does not have a sensory gym, and some of its limited sensory equipment was broken. E.L. requires specialized suspended equipment to address his OT needs.

98. P79 would not have provided E.L. with sufficient vocational and community training opportunities.

99. Ms. Sencion testified that, despite the fact that P79 is primarily vocational school, her class did not participate in the work program during the Summer of 2011.

100. P79 would not have provided Plaintiffs A.L. and V.R. with adequate feedback, counseling, or training related to E.L.'s educational program.

**Plaintiffs' Unilateral Placement of E.L. at The McCarton School Appropriately Addressed His Needs for the 2011-2012 School Year**

101. Due to Defendant's failure to offer E.L. an appropriate IEP and placement for the 2011-2012 school year, Plaintiffs A.L. and V.R. chose to unilaterally place E.L. at McCarton for the 2011-2012 school year.

102. The hearing record demonstrates that Plaintiffs adequately met their burden of proving that McCarton appropriately addressed E.L.'s unique

needs and enabled him to make measurable progress and to avoid regression during the 2011-2012 school year.

103.   McCarton is a small, special education school that services students, aged three to seventeen, who have been diagnosed with autistic spectrum disorders.

104.   The school provides one-on-one ABA instruction to all students.

105.   During the 2011-2012 school year, E.L. was enrolled in the Upper School, which is a transition program for adolescents and includes assistance with behavioral issues, social skills, sex education, community training, and adaptive daily living skills, as well as academic instruction.

106.   A team consisting of Dr. Gerhardt, E.L.'s teacher and parents, a BCBA, and related service providers prepared E.L.'s McCarton IEP.

107.   The overall IEP is reviewed quarterly, but individual programs are reviewed biweekly based on E.L.'s most current data.

108.   Data on each student's skill acquisition is collected and charted and is the basis for all decision making at McCarton.

109.   A FBA was conducted to assess the functions of E.L.'s behaviors and used to develop a BIP for E.L by McCarton.

110.   E.L.'s class consisted of five students and five adults, including Anthony Foglia, the classroom's lead teacher, and four other instructors.

111.   Mr. Foglia formally supervises the other instructors on a weekly basis, as well as providing daily oversight and training.

19

112.    Mr. Foglia's class was supervised by Dr. Gerhardt who has over thirty years of experience working with students on the autistic spectrum and a doctorate in special education.

113.    Dr. Gerhardt provided consultation in the classroom, direct supervision outside of the classroom, and office-based supervision in which the classroom teachers perform clinical reviews for each student on a bi-weekly basis. He is in Mr. Foglia's class every day.

114.    E.L.'s teachers and service providers meet each week.

115.    Mr. Foglia, Dr. Gerhardt, and Helen Bloomer, a BCBA who is the curriculum coordinator for the Upper School, meet biweekly to review E.L.'s data.

116.    E.L.'s instruction is primarily provided on a one-on-one basis.

117.    E.L. requires significant prompts and his rate of acquisition, attentiveness, and proficiency all improve in a one-on-one setting.

118.    Approximately 10-15% of his instruction each day is presented in a dyad to allow him to learn new skills increasingly larger groups.

119.    E.L. falls in the middle of the class in terms of academics, age, language skills, and behavioral needs. He is close to the top of the class in terms of adaptive skills.

120.    E.L. goes into the community daily to practice community-based behavior and generalizing skills taught at McCarton, which is necessary for his progress.

121.    The individuals directly involved in E.L.'s education all testified

that McCarton appropriately addressed his needs for the 2011-2012 school year.

122.    Mr. Foglia testified that E.L. is focusing on his ability to maintain attention, remain on task, and monitor his own behavior.

123.    He testified that E.L.'s accuracy ratings in math have improved, as has his reading comprehension and ability to engage in leisure activities.

124.    Dr. Gerhardt testified that E.L. has made progress in his daily living goals, in his ability to stay on task, increased his independency and self-sufficiency, learned new sight words, and improved his math and spelling skills.

125.    Plaintiff V.R. testified that her son made meaningful progress during the 2011-2012 SY in reading, spelling, receptive language, math, and in improving his safety in the community.

126.    McCarton also appropriately provided E.L. with his related services from licensed providers during his school day via a coordinated approach.

127.    He received SL for two forty-five minute individual sessions, one session in a dyad, and one small group session per week, and OT for three forty-five minute individual sessions and one small group session (on a push-in basis in his classroom) per week.

128.    These service levels are appropriate for E.L.

129.    E.L.'s service providers communicate and collaborate with his classroom staff regularly.

130.    E.L.'s related service providers all testified that he made progress

21

during the 2011-2012 school year

131.    SL is provided entirely on a push-in basis in the classroom, which allows E.L. to be taught pragmatic communication in his environment.  SL is not given to students while a group academic lesson is conducted.

132.    Mark Kanner, E.L.'s SL therapist, testified that he made progress during the 2011-2012 SY in using age appropriate and functional vocabulary, identifying items, reporting events, answering WH questions and questions about things he has done in the past, understanding quantity, and engaging with peers using individual cues.

133.    Panos Reckoutis, the director of OT at McCarton testified that E.L.'s goals were appropriate for him and he made meaningful progress towards achieving them during the 2011-2012 SY.

134.    Thus the record demonstrates that McCarton provided E.L. with a coordinated and balanced program of academics, related services, and behavior training, which appropriately addressed E.L.'s needs for the 2011-2012 school year.

**A Weighing of the Equities Supports An Award of Reimbursement for the Cost of E.L.'s Tuition for the 2011-2012 School Year**

135.    The record demonstrates that Plaintiffs A.L. and V.R. fully cooperated with the CSE in this case and were willing to consider any appropriate public placement for their son for the 2011-2012 school year.

136.    Plaintiff V.R. attended the May 19, 2011 CSE meeting.

137.    She wrote to the CSE on June 15, 2011 and informed them that she had not yet received a copy of E.L.'s 2011-2012 IEP.

138.    Some time after June 15, 2011, the parents received the Final Notice of Recommendation recommending a 6:1:1 class at P79.

139.    V.R. scheduled an appointment to tour the recommended program to consider whether the program would be appropriate for E.L. for the 2011-2012 school year.

140.    V.R. visited the program on June 21, 2011.

141.    Based upon her visit V.R. determined that P79 would not be appropriate for E.L. for the 2011-2012 school year.

142.    V.R. notified the CSE in writing of her specific reasons for making this decision and to advise that she and her husband would thus be sending E.L. to McCarton for the 2011-2012 school year and would be seeking funding for that program from the DOE.

143.    In her letter, she also advised the CSE that she had not yet received a copy of E.L's 2011-2012 IEP.

144.    Defendant failed to respond to this letter in any way either to advise the parents that they had misunderstood anything regarding the offered program at P79 or to provide an alternative offer of placement for E.L. for the 2011-2012 school year.

145.    Defendant's failure to respond to Plaintiffs' letter to correct their

23

understanding of the offered program should weigh equitably in favor of reimbursement for the costs of E.L.'s program at McCarton.

146.   V.R. testified that she would have accepted an appropriate public placement had one been offered to E.L. for the 2011-2012 school year.

147.   It was only due to Defendant's failure to provide Plaintiff E.L. with an offer of FAPE that Plaintiffs were forced to unilaterally place E.L. at McCarton for the 2011-2012 school year and to incur the costs associated with that placement.

148.   The parents signed an enrollment contract with McCarton for E.L. for the 2011-2012 SY in June 2011.  V.R. testified that she only did this to ensure that E.L. had a spot in an appropriate program for the 2011-2012 SY.

149.   This contract allowed the parents to withdraw E.L. prior to July 5, 2011 and release themselves from any further financial obligation to McCarton for the 2011-2012 SY.

150.   The McCarton enrollment contract obligated the parents to pay tuition in the amount of $125,000 for the 2011-2012 school year.

151.   Plaintiffs paid the full cost of E.L.'s tuition at McCarton for the 2011-2012 SY.

152.   Since it was Defendant's failure to provide an appropriate program that forced Plaintiffs incur the costs associated with unilaterally placing E.L. in an appropriate alternative program at McCarton, Defendant should belatedly be required to pay the expenses it forced Plaintiffs to incur.

153.    The record thus supports a finding that the equities weigh in favor of Plaintiffs' claim.

154.    Upon information and belief, the DOE has partially funded EL's placement at McCarton under the pendency provisions of the law; but no final determination on the merits has been issued, and the DOE has not continued to fund the placement pursuant to pendency.

**The IHO Erroneously Found Defendant Offered Plaintiff E.L. a FAPE for the 2011-2012 School Year and Denied Plaintiffs' Request for Tuition Reimbursement**

155.    The IHO erroneously concluded that Defendant had offered Plaintiff E.L. a FAPE for the 2011-2012 school year and thus otherwise failed to address the merits of Plaintiffs' request for tuition reimbursement.

156.    The IHO erred in rejecting Plaintiffs' claim that the CSE team predetermined E.L.'s recommendation for a 6:1:1 class

157.    While "the lack of a DOE 1:1 ABA program" does not, by itself, "compel a conclusion that [the 6:1:1] program was offered for that reason," it does support the claim that Defendant had an incentive to find that E.L. did not require one-to-one ABA program.

158.    While Ms. Sencion did testify that she could have addressed E.L.'s goals, she based this speculative assessment exclusively upon a review of E.L.'s contested IEP.

159.    The IHO erred in finding that the BIP included in E.L.'s IEP was "sufficient."

25

160.    As the IHO correctly asserts, it is "undisputed" that no FBA was conducted by the CSE, however, the IHO erroneously found that this did not result in an invalid BIP.  Moreover, the IHO ignored state and federal regulations which require a FBA for a student whose behavior impedes his or her learning or that of others.

161.    The IHO points to the fact that the CSE reviewed McCarton's behavior plan for E.L., but that plan differs from the BIP included in his IEP.

162.    The IHO also points to the fact that Defendant's own classroom observation of E.L. was consulted in drafting the BIP.  Even if true, this observation was five months old at the time of the meeting and nine months old at the beginning of the 2011-2012 SY.

163.    The IHO incorrectly asserts that the BIP was drafted in consultation with representatives from McCarton, including E.L.'s teacher.  In fact, the record shows that the BIP was drafted subsequent to the meeting.

164.    Even assuming, arguendo, that the CSE used the discussion at the meeting to draft the BIP after the meeting, such discussion would still be insufficient to draft an appropriate BIP without a FBA.

165.    The IHO erred in finding that "the absence in the IEP of a written transition plan for moving to a new placement is not a basis for concluding that a FAPE has not been provided."  The absence of such a transition plan would make the program recommended by Defendant inappropriate for E.L.

166.    The IHO notes that the parent was sent a placement

recommendation prior to the beginning of the 2011-2012 SY, but ignores the fact

that the parent was sent a copy of E.L.'s 2011-2012 IEP subsequent to this, and

was therefore, unable to review it prior to her visit to P79 or bring it with her to

the visit.

167.   The IHO incorrectly stated that <u>Jose P.</u> does not apply to the instant

case.  On the contrary, all students, including the student in this case, are third

party beneficiaries to the class protected in <u>Jose P.</u>

168.   The IHO properly states that "the manner in which the placement

was selected by the placement office clearly does not bolster a claim that the

school was reasonably calculated to provide educational benefits," but incorrectly

dismisses this as unimportant compared to whether the school actually offered

would be appropriate for E.L.

169.   The IHO incorrectly found that Defendant's failure to include

parent training and counseling on the IEP was not a denial of FAPE because the

placement ultimately offered included these in their program. Such testimony

about the offered program should not be considered in assessing whether the May

2011 IEP was properly written.

170.   The IHO erroneously concluded that Plaintiffs' delayed receipt of

E.L.'s IEP did not interfere with their meaningful participation in the CSE

process.

171.   The record demonstrates that the IEP was drafted subsequent to the

meeting and that it was not finalized until shortly before it was mailed to the

Plaintiffs, making the IHO's claim that "the contents of the IEP was fully discussed at the CSE review" impossible.

172.   Further, The IHO also improperly failed to consider Plaintiff's claims that the parent and participants from McCarton were denied an opportunity to fully participate in the CSE meeting and in the development of Plaintiff E.L.'s IEP.

173.   The IHO improperly failed to find that these procedural inadequacies impeded Plaintiff D.P.'s right to a FAPE and rose to the level of a deprivation of educational benefit.

174.   In finding the recommended 6:1:1 staffing ratio to be appropriate for Plaintiff E.L., the IHO improperly discounted the evidence in the record indicating that a 6:1:1 placement, with one special education teacher and one paraprofessional, would be inappropriate for Plaintiff E.L.

175.   The IHO incorrectly asserts that ABA and TEACCH are substantially similar teaching methodologies, ignoring testimony from Ms. Minondo that they were different approaches and from Plaintiff V.R. that her son was taught using the TEACCH methodology and did not make progress.

176.   The IHO improperly disregarded evidence in the record indicating that E.L. requires one-on-one attention throughout the school day from an appropriately trained teacher, not a paraprofessional.

177.   While the IHO found that the paraprofessionals in the offered class would be appropriately supervised by the classroom teacher, the record indicated

28

that the teacher would be otherwise engaged with other students for half of the school day while the paraprofessionals provided instruction.

178.    The IHO improperly ignored testimony that E.L. would require substantial supports, which go beyond the presence of a 1:1 paraprofessional, in order to move from his current one-on-one ABA program to Defendant's 6:1:1 program.  Moreover, the testimony the IHO cited as evidence that E.L. was capable of transitioning describes transitions far less substantial than a move to Defendant's recommended program, including a change in location, transportation, staff, teachers, service providers, peers, and methodology.

179.    The IHO further erred in finding that the placement recommended at P79 was appropriate to address Plaintiff E.L.'s needs.

180.    By erroneously finding that the DOE had a place available in the recommended program on the first day of school, the IHO ignored the testimony of Ms. Ortiz that E.L.'s name would not have appeared on any class roster as of the beginning of the school year and evidence that the available spot in the recommended class was offered to other students.

181.    The IHO erroneously found that Defendant proved the appropriateness of the offered placement for the Summer of 2011 and the remainder of the 10-month SY.  On the contrary, Defendant presented no evidence regarding the program being offered to E.L. beginning in September and there is ample evidence in the record that such a program would have differed substantially from the Summer 2011 program, including having a different

teacher, paraprofessionals, related service providers, and peers.

182.    While the IHO found that the Special Education Service Delivery Report was not "dispositive of the issue of whether a school is capable of providing services to a particular student," there is substantial evidence in the record which call into question P79's ability to meet E.L.'s related service mandate.

183.    The IHO states that Defendant may issue RSAs "in order to satisfy its obligation to provide a FAPE," but ignores testimony from E.L.'s service providers that E.L. must receive his services during the school day on a push-in basis.

184.    Further, The IHO also improperly failed to consider Plainiff's claims that the offered class also would not have provided E.L. with a similarly functioning, appropriate peer group or appropriate opportunities for community training.

185.    The IHO thus erroneously found that Defendant had proven it offered Plaintiff E.L. a FAPE for the 2011-2012 school year and denied Plaintiffs' claim for tuition reimbursement.  In doing so, the IHO failed to issue determinations regarding whether McCarton appropriately addressed Plaintiff E.L.'s needs for the 2011-2012 school year or whether the equities otherwise supported Plaintiffs' claim for tuition reimbursement.

**The SRO Erroneously Dismissed Plaintiffs' Appeal, Sustained the IHO's Decision, and Failed to Address the Merits of Plaintiffs' Claim for Tuition Reimbursement**

186.    The SRO erroneously determined that the IHO had correctly found that Defendant had established it offered Plaintiff D.P. a FAPE for the 2009-2010 school year.

187.    While the SRO correctly stated that the law does not require a CSE to draft the IEP with the student's parents present, the law does require the CSE to provide parents with a meaningful opportunity to contribute to the development of their child's IEP. <u>Sch. for Language and Commc'n Dev. v. New York State Dep't of Educ.</u>, 2006 WL 2792754 (E.D.N.Y. Sept. 26, 2006).

188.    The SRO ignored Plaintiff's claims that the parents were denied meaningful participation in the meeting because the BIP was drafted subsequent to the meeting, without the parent's input.

189.    The SRO correctly asserts that a BIP should be "based on multiple sources of data and must be based on more than the student's history of presenting problem behaviors" However, despite the fact that no FBA was conducted, the SRO improperly sustained the IHO's determination that the BIP included in E.L's IEP was appropriate.


190.    The SRO incorrectly found that the supports listed in the IEP were sufficient to allow E.L to make academic and social/emotional progress.

191.    The SRO noted that the CSE consulted participants from McCarton regarding E.L.'s behaviors, however, upon information and belief, the

BIP was drafted subsequent to the meeting without the parent or McCarton participants.

192.    The SRO ignored Plaintiff's claims that the CSE failed to adequately consider sufficient evaluative and documentary material in developing Plaintiff E.L.'s IEP and program recommendations.

193.    The SRO improperly sustained the IHO's determination that Defendant's 6:1:1 recommendation was appropriate to address E.L.'s academic and social/emotional needs.

194.    The SRO incorrectly determined that the offered program would have provided E.L. with sufficient one-on-one academic and behavioral support and fails to address Plaintiff's claims that the paraprofessionals in the offered class were not adequately trained or supervised to be able to address E.L.'s unique needs.

195.    The SRO improperly sustained the IHO's finding that the CSE's failure to include a transition plan for E.L.'s move from the program at McCarton to Defendant's 6:1:1 program did not constitute a denial of FAPE.

196.    Moreover, the transition supports listed in the IEP and discussed by the SRO are inadequate to support E.L. in such a significant transition and are substantially different from the plan the McCarton asserted that he required.

197.    The SRO incorrectly sustained the IHO's determination that the omission of parent counseling and training on the IEP did not constitute a denial of FAPE because such services were available at the proposed school, but the

32

SRO failed to address Plaintiff's argument that such testimony about the offered

program should not be considered in assessing whether the May 2011 IEP could

properly be implemented as written.

198.    The SRO erroneously found that E.L.'s academic needs could be

addressed in a class with a six year range of functional ability by finding that he

would be functionally grouped, but failed to address Plaintiff's claims that such a

wide range of ability would not allow E.L. to get adequate attention and support

from an appropriately trained teacher.

199.    In considering Plaintiffs' appeal, the SRO erred in deciding not to

address Plaintiff's claims that the range of ages of the students in the offered class

violated State regulations on the ground that this claim had not been properly

raised in Plaintiffs' impartial hearing request.

200.    Contrary to the SRO's finding, Plaintiffs' impartial hearing request

alleged the offered placement is not reasonably calculated to provide E.L. with

educational and social/emotional benefit.

201.    Furthermore, even if these issues were not explicitly raised in

the impartial hearing request, they were nonetheless properly before the IHO since

the record demonstrates these issues were fully raised during the impartial hearing

and that Defendant failed to object to their consideration.

202.    The SRO's erroneously sustained the IHO's determination that the

offered placement would have been able to appropriately fulfill E.L.'s service

mandate.  Despite the fact that the SRO points to the possibility that RSAs could

be issued to students, the Special Education Delivery Report indicates that a significant portion of students were not receiving services.

203.    The SRO ignores Plaintiff's claims that RSAs would be inappropriate for E.L. as he requires his services during his school day on a push-in basis.

204.    Even if the SRO correctly determined that the placement's inability to meet some of its students' service mandates does not prove that it will be unable to satisfy E.L.'s service mandates, P79's track record demonstrates that they would be unable to fulfill E.L.'s substantial related service mandate.

205.    Despite the SRO's claims, Ms. Sencion testified that she primarily used the TEACCH methodology in the classroom.

206.    The SRO erroneously ignored substantial evidence in the record highlighting the differences between the TEACCH and ABA methodologies and improperly downplayed and ignored testimony that E.L. was unable to make progress with the TEACCH methodology in the past.

207.    The SRO erroneously found that E.L. did not require the support of specific sensory equipment to address his OT needs.

208.    The SRO improperly ignored Plaintiff's claims that the DOE failed to demonstrate that it offered an appropriate program to E.L. since it presented no evidence regarding the appropriateness of its program for the mandatory 10-month SY commencing in September 2011, that Defendant's

34

burden is not limited to demonstrating the appropriateness of its program as of the first day of school in July, and that the program allegedly offered to E.L. was not a continuous twelve-month program, but included two distinct components for Summer and Fall.

## CAUSES OF ACTION

209.    Plaintiffs repeat, re-allege, and reassert each and every response and allegation set forth in paragraphs 1 through 207 above, as if more fully set forth herein.

210.    Defendant's failure to offer Plaintiff E.L. an appropriate educational program and placement for the 2011-2012 school year, the IHO's decision finding against Plaintiffs and denying their request for reimbursement for the cost of Plaintiff E.L.'s placement and attendance at McCarton for the 2011-2012 school year, and the SRO's decision upholding the IHO's determination deprived Plaintiff E.L. of a FAPE pursuant to the IDEA, 20 U.S.C. §§ 1400, et. seq., and the regulations promulgated thereunder.

211.    Defendant's failure to offer Plaintiff E.L. an appropriate educational program and placement for the 2011-2012 school year, the IHO's decision finding against Plaintiffs and denying their request for reimbursement for the cost of Plaintiff E.L.'s placement and attendance at the McCarton School for the 2011-2012 school year, and the SRO's decision upholding the IHO's determination deprived Plaintiff E.L. of a FAPE pursuant to the IDEA, 20 U.S.C.

§§ 1400, et. seq., and the regulations promulgated thereunder, and thus deprived Plaintiffs of rights secured by federal law in violation of 42 U.S.C. § 1983.

212.    Defendant's failure to offer Plaintiff E.L. an appropriate educational program and placement for the 2011-2012 school year, the IHO's decision finding against Plaintiffs and denying their request for reimbursement for the cost of Plaintiff E.L.'s placement and attendance at the McCarton School for the 2011-2012 school year, and the SRO's decision upholding the IHO's determination deprived Plaintiff E.L. of a FAPE pursuant to Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794.

213.    Defendant's failure to offer Plaintiff E.L. an appropriate educational program and placement for the 2011-2012 school year, the IHO's decision finding against Plaintiffs and denying their request for reimbursement for the cost of Plaintiff E.L.'s placement and attendance at the McCarton School for the 2011-2012 school year, and the SRO's decision upholding the IHO's determination deprived Plaintiff E.L. deprived Plaintiff D.P. of a FAPE for the 2011-2012 school year pursuant to Section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794, and thus deprived Plaintiffs of rights secured by federal law in violation of 42 U.S.C. § 1983.

214.    Defendant's failure to offer Plaintiff E.L. an appropriate educational program and placement for the 2011-2012 school year, the IHO's decision finding against Plaintiffs and denying their request for reimbursement for the cost of Plaintiff E.L.'s placement and attendance at the McCarton School for

the 2011-2012 school year, and the SRO's decision upholding the IHO's determination violated Plaintiffs' rights under Article 89 of the New York Education Law, specifically N.Y. Educ. Law §§ 1401, 1404, & 1410, and pursuant to the regulations of the New York State Commissioner of Education, codified at 8 N.Y.C.R.R. § 200, et. seq.

## REQUESTED RELIEF

    a.    Issue a Judgment requiring Defendant to continue to fund E.L.'s attendance at McCarton under the pendency provisions of the law until a final determination on the merits is rendered.

    b.    Issue a Judgment requiring Defendant to reimburse Plaintiffs A.L. and V.R. for the costs associated with Plaintiff E.L.'s attendance at McCarton for the 2011-2012 school year.

    c.    Issue a judgment that Defendant's failure to provide a FAPE violated Plaintiffs' rights under the IDEA, Section 504 of the Rehabilitation Act of 1973, Section 1983 of the Civil Rights Act, and the New York Education Law;

    d.    Award to Plaintiffs their costs and attorneys fees; and

    e.    Grant such other and further relief as may be deemed appropriate.

Dated: August 2, 2012
      New York, New York

Respectfully Submitted,

LAUREN A. BAUM (LAB 1899)
Law Offices of Lauren A. Baum, P.C.
307 East 53rd Street, Suite 501
New York, New York 10022
Telephone: (212) 644-4414
Facsimile: (212)644-8470
Lbaum@nyspecialedlaw.com
*Counsel for Plaintiffs*