## FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 133658 |
| Student's Name: | ████████████ |
| Date of Birth: | July 11, 1996 |
| District: | 2 |
| Hearing Requested By: | Parents |
| Dates of Hearing: | September 23, 2011 |
| | November 16, 2011 |
| | December 16, 2011 |
| | December 20, 2011 |
| | December 22, 2011 |
| **Actual Record Closed Date:** | **January 18, 2012** |
| Hearing Officer: | Judith Schneider, Esq. |

Hearing Officer's Findings of Fact and Decision                    I

Case No.  133658

---

## NAMES AND TITLES OF PERSONS WHO APPEARED ON SEPTEMBER 23, 2011

For the Student:

GARY MAYERSON, Attorney

████████████, Mother

For the Department of Education:

CARLETHA PARKINSON, Attorney

## NAMES AND TITLES OF PERSONS WHO APPEARED ON NOVEMBER 16, 2011

For the Student:

MARIA C. MCGINLEY, Attorney

████████████ Parent

For the Department of Education:

CARLETHA PARKINSON, Attorney

JANET SENCION, DOE Special Ed Teacher (via telephone)

ARIELLA GARAFALO-BERGIER, DOE Social Worker (via telephone)

## NAMES AND TITLES OF PERSONS WHO APPEARED ON DECEMBER 16, 2011

For the Student:

GARY MAYERSON, Attorney

JENNY WINCE, Observation

████████████, Parent

DR. STACEY MINONDO, Director of Placement for District 75 (via telephone)

DR. PETER GERHARDT, McCarton Upper School (via telephone)

DR. PANOS REKOUTIS, OT Director, McCarton (via telephone)

For the Department of Education:

CARLETHA PARKINSON, Attorney

Hearing Officer's Findings of Fact and Decision

Case No. 133658

2

---

## NAMES AND TITLES OF PERSONS WHO APPEARED ON DECEMBER 20, 2011

For the Student:

GARY MAYERSON, Attorney

███████████, Parent

MILDRED RODRIGUEZ ORTIZ, A.P. 79M (via telephone)

ANTHONY FOGLIA, Classroom Teacher, McCarton (via telephone)

MARK KANTER, Speech Pathologist, McCarton (via telephone)

For the Department of Education:

CARLETHA PARKINSON, Attorney

## NAMES AND TITLES OF PERSONS WHO APPEARED ON DECEMBER 22, 2011

For the Student:

GARY MAYERSON, Attorney

███████████ Parent

DR. PETER GERHARDT, Director, McCarton Upper School (via telephone)

For the Department of Education:

CARLETHA PARKINSON, Attorney

Hearing Officer's Findings of Fact and Decision                    3

Case No. 133658

---

On September 23, 2011, November 16, 2011, December 16, 2011, December 20, 2011 and December 22, 2011, I conducted an Impartial Hearing at the New York City Department of Education ("DOE") Impartial Hearing Office, 131 Livingston Street, Brooklyn, New York, pursuant to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. §1415, and Article 89 of the Education Law of the State of New York, regarding the special education program of XXX ("the student").

The proceeding was initiated at the request of the parents by correspondence dated June 30, 2011. (Ex. B) I was appointed Impartial Hearing Officer on July 1, 2011. (T.   ) By correspondence dated July 27, 2011, the parents filed an amended hearing request. (Ex. A) The resolution period concluded on or about August 14, 2011. I was available to commence the hearing within 14 days of the end of resolution. At conferences conducted on August 15 and 16, 2011, the initial hearing was scheduled for September 23, 2011, the first mutually available date for the parties, their witnesses and the hearing officer. (T. 1, Ex. *VI*)

An Interim Order on Pendency was issued on October 11, 2011 based upon the student's entitlements as determined in the Findings of Fact and Decision dated August 11, 2011 of an Impartial Hearing Officer Nancy Lederman, Esq. (Ex. C) Pursuant to the interim order the student was entitled to receive through the pendency of this action payment for tuition at the The McCarton School ("McCarton" or "the school") in an amount not to exceed $125,000 for a 12 month school year and transportation to and from the school. (Ex. VII)[1]

The initial compliance date in this matter was September 29, 2011. On     three occasions the parties jointly moved to extend the compliance date in light of anticipated testimony, the scheduling of witnesses and submission of evidence at the hearings. (T. 77, 262, Ex. *II*)   At the hearing on December 22, 2011, when the compliance date was December 30, 2011, the parents requested a further extension to permit receipt and review

---

[1] Entered into the record as Exhibits *I* and *II* are motion papers concerning subpoenas on behalf of the parent. Certain exhibits to the parents motion were excluded from the record as indicated in list of Documents entered into the record and in the transcript. The parties ultimate positions with regard to the motion and my oral decision are also included in the transcript.

Hearing Officer's Findings of Fact and Decision                                4

Case No. 133658

of the transcripts not yet received and the submission and consideration by me of written closing memoranda. The DOE, although having agreed to the hearing schedule and having previously requested issuance of such extensions as were necessary to enable those hearings to occur for the first time stated opposition to any further extension of the compliance date. (T. 669) With regard to each extension request, I weighed the cumulative impact of the relevant factors and found that the need for additional time to prepare and present positions in accordance with the requirements of due process was greater than the consequence of any delay in the resolution of this matter. Accordingly, each of the requests for extension of the compliance date was granted. (T. 669) Documentation as to the extensions was provided to the parties. (T. 22, 272, 672, Ex. *III*)

The current compliance date is January 30, 2012. The record closed on January 18, 2012, upon my receipt of all post-closing memoranda.

## BACKGROUND and POSITIONS OF THE PARTIES

The student, 15 years old at the time of filing, is classified with autism. That classification is not in dispute. The student has attended The McCarton School since 2004. (T.629)

On May 19, 2011, an IEP meeting was convened to consider the student's program for the 2011-2012 school year. Participants included a special education teacher who also served as District Representative, a DOE social worker, a DOE school psychologist, a parent member, the head teacher of the student's McCarton class, McCarton occupational and speech and language therapy providers, the McCarton upper school director, a McCarton BCBA and the student's mother. (Ex. 1-2)   The CSE recommended a special class in a specialized school (6:1:1), counseling (2x45-2:1), a full time 1:1 behavior management paraprofessional, occupational therapy ("OT") (5x45 - 1:1), speech and language therapy ("SL")(3x45- 1:1 and 1x45 -1:1). (Ex. D)

By letter dated June 15, 201, the CSE offered a placement in class Y77 at P79 at Horan School ("the public school") and various related services. (Ex. I)

Hearing Officer's Findings of Fact and Decision                                    5

Case No. 133658

By letter dated June 24, 2011, the parent rejected the placement and informed the DOE of their intent to continue the student in McCarton for the 2011-2012 school year. (Ex. 22)

The parents claim that the DOE failed to offer a free, appropriate public education ("FAPE") and assert that the May 19, 2011 IEP ("the IEP") was procedurally and substantively defective and that the DOE failed to offer an appropriate placement. Further, they claim that the 2011-2012 school year placement they unilaterally provided at McCarton is appropriate and that equitable considerations warrant reimbursement for tuition.[2] (Ex. IV)

The DOE asserts that the CSE complied with procedural requirements in the development of the IEP, designed an appropriate program that would provide a meaningful educational benefit in the least restrictive environment and that the placement it offered was appropriate. ????????? Further, it claims that McCarton is not appropriate for this student at this time and that equitable considerations do not support any tuition reimbursement. (Ex. V)

## WITNESSES PRESENTED

### A.   DOE

The DOE presented the testimony of Ariella Garafalo-Bergier, the social worker who participated in the review ("Bergier") and Janet Sencion, the teacher of the class the DOE alleges would be the student's ("Sencion" or "the DOE teacher")

**Bergier**'s testimony included the following:  The review meeting lasted about 1 ½ to 20 hours. (T. 194) The team had before it various documents prepared by McCarton including an IEP, a behavioral plan, SL and OT progress reports and goals as well as classroom observation by DOE staff and Level 1 Vocational Interview (Ex. 3) (T. 191, 193) She does not dispute McCarton reports of progress and no one at the review indicated disagreement. (T. 251) Bergier has observed and worked in 6:1:1 classrooms

---

[2] The parents initially requested transportation and seven hours per week of after school 1:1 ABA but have withdrawn those requests. (T. 599, 626)

and described them as very structured with a lot of small group instruction and characterized by predictable routines, visual schedules and visual reminders of the behavior program. (T. 197) She has worked and taught in a DOE school for autistic children. (T. 216)

With regard to this student the focus of the team was on the development of functional skills he could take into the community. (T. 198) The team discussed the student's academic levels, went over all the goals on the DOE and McCarton IEPs, to develop current goals, and discussed progress. (T. 198, 199, 200, 206, 207-208) Information as to his academic functional levels came from his teacher. (T.199) It was reported that the student's strengths were that he was getting along with peers, becoming more cooperative and was an "ambitious student." (T. 199)     The IEP's academic management needs were based upon the totality of his learning style and each one was considered by the team at the review. (T. 200-201)

Social emotional needs were discussed including what supports or interventions were working and his progress and his behaviors. The team considered the student's needs for predictability and that changes upset him if there was no prewarning. The team was informed that the student's behaviors became manifest when things in his routine were changed and that a main strategy for dealing with it was prewarning, providing an opportunity for input and reinforcing positive behavior. (T. 202-204) A BIP was drafted using the participants' input and the McCarton BIP. (T. 205) Behaviors addressed in the BIP were discussed at the review and there was no objection. (T. 205)  A 1:1 paraprofessional was provided both to help transition from the McCarton program and because he needs support for academic and management needs. (T. 211) The parents were mailed a copy of the IEP prior to the beginning of the school year. (T. 212)

A transition plan for adulthood was developed based upon information from the school and parent. (T. 213-214) Bergier testified with regard to transition to another school that the team believed that would have been addressed by the 1:1 para among other things. (T. 260) She stated that the team believed the program it developed was appropriate. (T. 215) McCarton participants had agreed that a small class with individual

support was appropriate and agreed with the academic and behavior modifications specified. (T. 252-253)  Bergier opined that the IEP program paralleled the McCarton program which she described as a small class with 1:1 support all day and which she believes is promoting increasing independence as this student gets older with, among other things, a visual schedule and is focusing less on academic skills.  (T. 254, 267-269) Bergier also noted that the IEP in various places proposes certain features of ABA  (T. 257) which are similar to strategies used at McCarton. (T. 269)

Sencion's testimony included the following:  She has Masters degrees in special education and regular education, has worked with children with autism for 8 years and has received training and attended workshops in ABA and TEACCH.  (T. 96-97,150) Sencion testified that she was informed by Ortiz at the beginning of the year that this student would be in her class. (T. 142-144)

She is currently teaching at the recommended school and had a 6:1:1 class there during the summer.  (T. 95, 98)  She had an additional classroom para as well as a 1:1 para during the summer and one classroom para and two 1:1 paras in the Fall.  (T. 136-137)  On the first day of school in July 2011, she had 5 students, all classified as autistic, from 11 to 14 years old, perhaps close to 15.  (T. 98, 128)  She testified based upon review of this student's IEP that he would have been appropriately placed in her class.  (T. 98) Her students' functional levels ranged from kindergarten through 6th grade, with one student with kindergarten skills in all areas, one with 6th grade level skills in all areas and two to three students with skills between 2nd and third grade.  (T. 99,180-181)  She groups homogeneously and provides 1:1 instruction dependent on a student's need and IEP. (T. 100, 103, 167)  Four of the students were verbal and one had a BIP and a 1:1 para because of escaping behaviors. (T. 101, 135, 136)  Various assessments were conducted in the summer and an additional assessment was introduced in the Fall.  (T. 101, 172-)  OT, SL and Adaptive Physical Education were available during the summer. (T. 101-103)

Sencion testified that because it is a TEACCH classroom, her room has a sensory corner and information is obtained from parents about sensory issues or positive

Hearing Officer's Findings of Fact and Decision                                        8

Case No. 133658

reinforcement using the sensory corner and additional material obtained if necessary. (T. 103-104) Individual schedules for each student utilize Mayer-Johnson symbols. (T. 104-105, 118) Differentiated instruction is provided in accordance with IEP specifications. (T. 105-106) Discrete trials are used and data is collected and graphed daily and reviewed by the teacher weekly and used to guide instruction and to evaluate goals. (T. 106-107, 122, 152)   A token system is in place in the school and other positive reinforcers when appropriate for a student.   (T. 108, 109-110) Money skills are taught and used on community trips which also teach safety and generalize skills. (T. 109, 114-115)   The school has equipment for training in various vocational skills and opportunities to work outside when ready. (T. 111) Students use manipulatives, iPads, sequencing cards, visual supports and communications devices in the course of instruction.   (T. 116, 110, 170) Prompting, fading, repetition and positive verbal reinforcement are used.   (T. 117, 124-125)  With regard to this student's IEP, Sencion stated that she would have been able to work on the specified goals in her class and would have been able to implement the behavior plan using TEACCH techniques. (T. 117, 123-127, 145, 148)

Sencion stated that TEACCH and ABA share certain classroom techniques including collecting data 1:1, graphing repetition, positive reinforcement and prompting. (T. 150-152) The school has two teachers who are TEACCH certified TEACCH coaches and Ortiz function as an autism coach. (T. 153) The coaches developed checklists for assessment and the data collection sheets.  (T. 174) All student data is checked with them in weekly meeting.  (T. 153) She as responsible for academic instruction and the paras reinforce her instruction.  (T. 155-156)

B.      **Parents**

The parents presented the testimony of: Mildred Rodriguez Ortiz, the AP of the public school ("Ortiz" or "the AP"); Dr. Stacey Minondo, District 75 placement director ("Minondo" or "the placement director"); Dr. Peter Gerhardt, Director of McCarton Upper School ("Gerhardt"); Dr. Panos Rakoutis, McCarton's OT Director ("Rakoutis");

Hearing Officer's Findings of Fact and Decision                                            9

Case No. 133658

---

Anthony Foglia, McCarton classroom teacher ("the Foglia"); Mark Kanter, McCarton
speech pathologist ("Kanter"); the student's mother ("the parent").

      **Ortiz**'s testimony included the following: This is her fourth year as AP of the
DOE school. (T. 458) The school day is 8:00 to 2:50. (T. 480) A student is assigned to a
particular class only when the parent has accepted the seat. (T. 459-461) She knows
nothing about any document that did or would inform Sencion that this student was on a
list of incoming students. (T. 461) The school playground was not in use July 2011 and
thereafter because it was suitable only for young students. (T. 466) However, there is an
adjacent park to which the students have supervised access. (T. 490-491) Ortiz stated
that RSAs have been issued in every year she has been at the school. (T. 471-472) In May
2011, the DOE school was having problems delivering related service mandates in OT
and provided RSAs. (T. 468, 471, Ex. TT) RSAs also went out this school year in part
because two OTs did not return in September. (T. 471, 476-478, 490) Ortiz did not know
when they went out, has no information as to how many were actually fulfilled by the
parents and does not know anyone who does. (T. 473-474) The only way anyone at the
school would know that a student was not receiving services would be if a parent reported
it. (T. 475) Communications with the school by a provider obtained by the parent
pursuant to RSA would be up to the provider. (T. 475) The school does not have a
sensory gym and did not ask for sensory equipment for its gym because no one required
it. (T. 481, 489) However, there is sensory equipment in the related services room as
well as in classrooms. (T. 490, 491) Ortiz stated that none of the students in Sencion's
summer class were in her Fall class. (T. 483) The paras in Sencion's summer class
completely or largely changed in the Fall. (T. 483)

      **Minondo**'s testimony included the following: She is the Director of Placement for
District 75. (T. 292) That district has some 400 school sites within the city and the sites
differ with regard to the services and accommodation offered. (T. 293) Minondo stated
that if the Placement Office was aware of the student's success in a certain methodology
it would look at that methodology as a possible placement. (T. 302) In her understanding,
although not as an expert in either, TEACCH and ABA fall under the same umbrella as

Hearing Officer's Findings of Fact and Decision                              10

Case No. 133658

methodologies although not the same approach. (T. 302-305) The Placement Office does not seek to determine whether mandated services will be provided through service at the school of RSAs. (T. 309) She testified that regulations require no more than a 36 month chronological age span in a 6:1:1 class if students are not 16 and over. (T. 310-311) She stated that she would not intentionally place a student for July and August with the knowledge that the staffing would change in September because of the importance of consistency for all students. (T. 314, 318) Minondo is not aware of any DOE schools with a 1:1 ABA teaching model. (T. 328)

The student's **mother's** testimony included the following: The student has been in McCarton since 2004 and previously was in approved non public schools paid for by the DOE. (T. 629, 665) Her best recollection is that she received the IEP on June 30, 2011, about two weeks after receipt of the FNR. (T. 581-582) She visited the school on June 21, 2011, spent about an hour there and spoke "extensively" with Ortiz. (T. 584) Ortiz informed her that the teacher and the providers would be different in September, that the methodology would be TEACCH, that the school did not provide 1:1 instruction and that there was no suspended equipment. (T. 585-592) The parent visited two classrooms and observed a student who was unattended and rocking. (T. 619, 622) The parent stated that TEACCH had not been effective when used in the Forum School between the ages of 5 and 7 ½. (T. 587) Further, the parent stated that if the student was left unattended he would perseverate and become overexcited and vocalize, requiring an extended period afterwards to be ready to learn. (T. 593, 640) The parent received no response from the CSE to her letter stating various concerns. (T. 586, Ex. 22) The parent testified that if she were offered and appropriate program and placement she would consider it. (T. 594) She stated that the student was making meaningful progress at McCarton and that she communicates daily with his teacher and visits weekly. (T. 594-595) The parents executed a contract with McCarton and paid $5000 in June 2011 as a deposit in order to ensure a place for the student and $120,000 in July and thereafter for the balance of the tuition. (T. 595-597, 635, Exs. PP, QQ)

Hearing Officer's Findings of Fact and Decision                    11

Case No. 133658

_____

    With regard to the review, the parent stated that the meeting lasted about two hours and that there had been a full discussion regarding the student's academic deficits and needs and that related service needs, and goals and objectives and behaviors were also discussed. (T. 599-601, 603) The team considered the student's severe attention deficit, verbal perseveration, rigidity and upset when things are not his way and the strategies McCarton uses including preparation for change. (T. 603-605). The parent also discussed his need for 1:1 instruction. (T. 604)  She had reviewed the McCarton reports and does not disagree with them. (T. 601, 605) With regard to another evaluation, she had been told that she could make the request but not at the IEP meeting and she has not made a request. (T. 601) The parent stated that at-home ABA is being provided for the student at parental expense. (T. 626)

    Gerhardt's testimony included the following: The Upper School at McCarton has three classrooms and provides a 40 hour week program that utilizes ABA. (T. 344, 411) It includes a component of sexuality education. (T. 339, 341) The student's McCarton IEP is reviewed quarterly but individual programs are reviewed biweekly based upon current data. (T. 337) The student "presents with significant educational and adaptive behavior challenges." (T. 343) His predominant challenging behavior is currently distractibility and McCarton is working on teaching him to manage his own behaviors by self-monitoring. (T. 351-352)  Consistency in instructional style and expectations is important for him and he is able to do relatively well if he knows all the rules. (T. 355, 406)  The student has deficits in terms of safety appreciation which McCarton is addressing. (T. 343-344)  Currently, he goes out into the community three-five times per week to practice taught skills. (T. 344)

    The student's primary instruction is on a 1:1 basis and the student has a staff person with him at almost all times. (T. 344) Some 10-15% of his instruction is provide in a dyad without a 1:1 in order to enable him to learn new skills. (T. 354) His science class is a group of seven with a 1:1. (T. 405-406) At McCarton 1:1 staff rotate through the students on a schedule. (T. 363)  Gerhardt opined that the student would not be

Hearing Officer's Findings of Fact and Decision                                    12

Case No. 133658

appropriately placed in a 6:1:1 classroom because he would "get lost" and that he requires intensive 1:1 to acquire new skill sets. (T. 399)

Gerhardt testified with regard to TEACCH that it incorporates some aspects of behavior analysis but is not a behavior analytic program and does not have the same research base as ABA. (T. 363, 369, 370) He opined that the student could sustain current skill levels, but not improve if he were in a TEACCH program. (T. 371) However, the student is expected to continue to make progress at McCarton with his current program. (T. 372) In connection with transition issues, Gerhardt stated that although it has not occurred at the upper school, the student has had "occasional" behavioral outbursts when things he thought were supposed to happen did not happen and something like that could occur in the future without appropriate planning. (T. 376) Gerhardt stated that the student would need a transition plan even if he were moving to a different ABA school to try to reduce confusion and disruption in a new environment. (T. 375) An appropriate transition plan would require several weeks of new staff at McCarton, a some brief period of McCarton staff at the new placement, and the student shuttling between for a period. (T. 377) He stated that without an appropriate transition plan , the short-term (six months) could be very difficult for this student. (T. 378) Gerhardt would not recommend a program in which all staff would change in the same period. (T. 378)

Foglia's testimony included the following: The student requires significant prompts and his rate of acquisition, attentiveness and proficiency are all higher in a 1:1 setting. (T. 513-514) He stated that he would not confidently say that a 6:1:1 class would benefit the student. (T. 516) His class at McCarton has five students and at All times there are five adults and there are no dividers between the students. (T. 527)

Kanter's testimony included the following: The student is verbal. (T. 539) However, on eof his major deficits is language processing and he requires additional time and benefits from visual aids and written choices. (T. 539-540) Kanter testified that the student is not necessarily distracted by talking per se but by sey self-distraction or

something significant in his environment.   (T. 547) The student, he said, is very redirectable. (T. 547-548)

Rekoutis's testimony included the following:   McCarton has a sensory gym with specialized sensory equipment, as well as sensory diets for the students that are used in various areas including classrooms.    (T. 432-433)  OT providers collaborate with classroom staff on various issues including modifications to the student's exercise profile.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The legal standard applicable to a request for reimbursement for educational services is well established.  Reimbursement is granted if:  (1) the services offered by the Board of Education are inadequate or inappropriate (Prong 1); (2) the services selected by the parent are appropriate (Prong 2); and (3) equitable considerations support the parent's claim (Prong 3).  *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7 (1993); *School Comm. of Burlington v. Department of Educ. of Mass,.* 471 U.S. 359 (1985).  In New York State the DOE bears the burden of proof with regard to Prong 1 and the parents bear the burden of proof with regard to Prong 2.   *Educ. Law 4404[1][c]*

With regard to the testimony of the witnesses, I find the testimony of each credibly in that I conclude that they testified truthfully in accordance with their recollections and as to the opinions they held.  Transcript and exhibit references not specified below are included in the discussion of the testimony above.

**Prong 1:**

An appropriate educational program begins with an Individualized Education Program (IEP) which accurately reflects the results of evaluations to identify the student's needs, establishes annual goals related to those needs, and provides for the use of appropriate special education services (*Application of a Child with a Disability,* Appeal No. 04-046: *Application of a Child with a Disability,* Appeal No. 02-014: *Application of a Child with a Disability,* Appeal No. 01-095: *Application of a Child Suspected of Having a Disability,* Appeal No. 93-9).  While school districts are required to comply

Hearing Officer's Findings of Fact and Decision                    14

Case No. 133658

with all Individuals with Disabilities Education Act procedures, not all procedural errors render an IEP legally inadequate under the IDEA (*Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F. 3d 377, 381 [2d Cir. 2003]) If a procedural violation has occurred, relief is warranted only if the violation affected the student's right to a free appropriate public education (FAPE) (*J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 69 [2d Cir. 2000]). A denial of a FAPE occurs when procedural inadequacies either result in a loss of educational opportunity for the student, seriously infringe on the parents' opportunity to participate in the IEP formulation process (see *Werner v. Clarkstown Cent. Sch. Dist.*, 363 F. Supp. 2d 656, 659 [S.D.N.Y. 2005]; *W.A. v. Pascarella*, 153 F. Supp. 2d 144, 153 [D. Conn. 2001]), or compromise the development of an appropriate IEP in a way that deprives the student of educational benefits under that IEP (see *Arlington Cent. Sch. Dist. v. D.K.*, 2002 WL 31521158 [S.D.N.Y. 2002]). In evaluating the substantive program developed by the CSE, the Second Circuit has observed that "for an IEP to be reasonably calculated to enable the child to receive educational benefits, it must be likely to produce progress, not regression" (*Weixel v. Bd. of Educ.*, 287 F.3d 138, 151 [2d Cir. 2002], quoting *M.S. v. Bd. of Educ.*, 231 F.3d 96, 103 [2d Cir. 1998]). This progress, however, must be meaningful; i.e., more than mere trivial advancement (*Walczak*, 142 F.3d at 130). The IDEA, however, does not require school districts to develop IEPs that maximize the potential of a student with a disability (*Rowley*, 458 U.S. at 197 n.21, 199; *see Grim*, 346 F.3d at 379; *Walczak*, 142 F.3d at 132. The student's recommended program must also be provided in the Least Restrictive Environment (20 U.S.C. § 1412[a][5][A]; 34 C.F.R. § 300.550[b]; 8 NYCRR 200.6[a][1]).

The parents assert that the IEP is procedurally and substantively defective and further claim that the DOE has failed to establish that it provided an appropriate placement. Numerous claims with regard to these issues were made in the parents' hearing request. I address such claims as do not appear to have been abandoned. See, *Application of a Child With a Disability*, Appeal No. 08-037. I include discussion of claims which the parents have neither asserted nor supported with legal argument in their closing memorandum but with regard to which they have cited testimony.

Hearing Officer's Findings of Fact and Decision                                    15

Case No. 133658

---

### A. Procedural defect claims

*Predetermination:* The parents assert that program recommended by the CSE was predetermined. I find that the evidence does not support that claim. The review lasted some two hours (T. 194) and included consideration of numerous documents including those prepared by McCarton and the input of McCarton staff. Bergier persuasively testified as to the reasons for the 6:1:1 program and the related services recommendations. (T. 196-198), the basis for the BIP the team prepared (T. 202-207) and how the goals were developed and why they addressed the student's educational deficits (T. 199-207). The fact that the parents do not agree with the program is not a basis for a conclusion that it was predetermined. The lack of a DOE 1:1 ABA program which could be offered, if such is the case, does not compel a conclusion that this program was offered for that reason.

*Goals:* Bergier testified that the goals were reviewed and discussed one by one at the review. (T. 199-207) The goals were specific to the student and based upon the deficits noted in the IEP. There has been no testimony by any of the witnesses that the goals were vague, ambiguous, unmeasurable or otherwise inadequate as written. With regard to that finding, I note the testimony of Sencion that she would be able to address them. The parent acknowledged that her sole concern regarding the goals was that they could not be accomplished in the program recommended. (T. 608) That claim is discussed with regard to whether the IEP is substantively defective.

*FBA/BIP:* The parents claim that the DOE failed to develop an appropriate FBA and BIP and that therefore a FAPE was not provided. It is undisputed that an FBA was not prepared. However, the evidence shows, that the CSE received and considered information from McCarton reports including its behavioral plan (Ex. 10), which included information from instructional staff and related service providers, the DOE's own observation and information provided by the review participants which included the head teacher and other McCarton staff very familiar with the student. The CSE therefore had substantial information concerning the student's problem behaviors, the reasons why he engages in such behavior and strategies the school was using to address that. The

Hearing Officer's Findings of Fact and Decision                                    16

Case No. 133658

absence of an FBA does not require a conclusion that a FAPE was not provided when a properly developed IEP adequately addressed the student's behavior problems by providing interventions and supports to address those needs. See *A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F. 3rd 165 (2nd Cir. 2009); *Application of a Student with a* Disability . Appeal No. 08-064

The BIP the team developed specifies strategies and supports to help modify the behaviors and reduce their negative effect on learning. (Ex. 1-29) It identifies the behaviors and provides strategies and techniques to address the student's attention problems, maintain the student's focus, avoid the student's "triggers" and limit his negative responses. There has been no testimony that it is incorrect and it is consistent with the testimony of the Bergier , Gerhardt and the parent on this issue. I conclude that it is sufficient.

*Transition*:  The absence in the IEP of a written transition plan for moving to a new placement is not a basis for concluding that a FAPE has not been provided.  See. *A.L. and V.R. v. New York City Department of Education*, 2011 U.S. Dist. LEXIS 85995. The issue of whether transition issues were appropriately considered will be discussed with regard to whether IEP the IEP was substantively defective.

*Related Service Mandate Fulfillment*:  The Special Education Service Delivery REPORT ("SESDR") submitted by the parent (Ex. TT) is not dispositive of the issue of whether a school is capable of providing services to a particular student. See *Application of a Student With a Disability* Appeal No. 10-060. See also, *A.L. and V.R. v. New York City Department of Education*, 2011 U.S. Dist. LEXIS 85995.   The persuasive evidence of Ortz shows that the student's related service mandates could have been fulfilled at the DOE school either directly or by RSAs. The DOE may issue RSAs in order to satisfy its obligation to provide a FAPE. (*Id.*)  The parents have cited no authority to contradict this conclusion.

*Parent Participation in the Placement Process*:  The parents assert that a FAPE was denied because the actual school location was not discussed with the parents at the review and not specified on the IEP.  However, the lack of a school placement on the IEP

Hearing Officer's Findings of Fact and Decision                                17

Case No. 133658

does not constitute a denial of a FAPE. See *T.Y. v. N.Y. City Bd. of Educ.*, 584 F.3d 412, 419-420 (2d Cir. 2009) With regard to that issue I note that here the DOE issued an FNR on June 15, 2011, prior to the commencement of the school year. (Ex. 7)

The parents also claim that the DOE must establish that its policies and procedures in selecting a school placement satisfy the "reasonably calculated" test. I conclude, based upon the testimony of Minondo, that no specific evaluation of the unique needs of this particular child was made by placement staff because it looked solely to finding a school that would provide the 6:1:1 services in a 12 month school year with related services available, whether at the school or supplemented by RSAs, which could provide a curriculum for children with the classification of autism. In the instant matter, the manner in which the placement was selected by the placement office clearly does not bolster a claim that the school was reasonably calculated to provide educational benefits. However, I conclude that the appropriate inquiry is not into the DOE's procedures but rather whether the school location it ultimately offered would have provided the student with an appropriate educational environment. That issue is discussed below. Further, claims based upon *Jose P.* are not relevant here where the parents are seeking funding for a private placement after a timely review and a timely offer of placement which was rejected by the parents. See *M.S. v. New York City Dep't of Educ.*, 2010 U.S. Dist. LEXIS 87682.

*Parent Training and Counseling:* The parents contend that the fact that the IEP did not specify parent training and counseling constitutes a denial of a FAPE. However, the evidence shows that parent training and counseling are programmatic in the program offered and that I am persuaded by the testimony of Bergier that the parents were informed at the review that parent training would have been provided. (T. 209-210, 250-251) The DOE teacher testified that that parent training workshops were available at the recommended school or through outside agencies that worked with the school, and various material is provided for home use. (T. 119-121, 161-162) Further, she testified that she provides individualized parent training and counseling to the parents of students in her class. The mother acknowledged that the AP had told her that parent training and

Hearing Officer's Findings of Fact and Decision                                          18

Case No. 133658

---

counseling would be offered to the parents.  (T. 630) Accordingly, I conclude that the
failure to specify the training/counseling on the IEP was not a denial of a FAPE.  See *E.Z-
L. v. N.Y. City Dep't of Educ.*, 201 U.S. Dist. LEXIS 6335.

Observation:  Although the parents appear to claim that the observation reviewed
by the CSE was not appropriately current, there is no claim or evidence that it was
incorrect at the time or that the student had significantly changed and the observation if
done later would be different.  There was no denial of a FAPE resulting from the date of
the observation.

Delayed receipt of IEP:  The parent acknowledged receiving the IEP prior to the
commencement of the school year.  The evidence shows that the contents of the IEP was
fully discussed at the CSE review.  I find no denial of a FAPE or interference with the
parents' meaningful participation in the CSE process as a consequence of the delayed
receipt of the IEP.  *See, Application of a Student with a Disability*, Appeal No. 11-032.

CSE Composition:  A general education teacher is not required when, as here, the
evidence does not support the conclusion that there was a reasonable likelihood that the
student would have been assigned to such a teacher.  *See, Application of a Student with a
Disability*, Appeal No. 11-025; *Application of a Student with a Disability*, Appeal No. 11-
008.  I conclude that the CSE was properly composed.

B.  **Substantive defect claims**

I turn now to the claim that the IEP was substantively defective.

The persuasive evidence shows that a properly composed CSE considered
extensive documentation prepared by the student's current school and teachers as well as
an observation and also considered information provided by several McCarton staff
members who knew the student.  Its description of the student's deficits and management
needs has not been disputed by the parents and I have concluded that the BIP it prepared
was satisfactory.   The parent had a meaningful opportunity to participate and provided
the CSE with her opinion concerning the program that was necessary.

Bergier persuasively testified that the CSE had concluded that the focus should be the development of functional skills that the student could take into the community.  (T. 198) That is not inconsistent with McCarton's emphasis.  (T. 254, 267-269)  The CSE considered the student's behaviors and how they interfered with learning and concluded that the student could make appropriate gains in a 6:1:1 program if he had 1:1 support and accordingly provided a 1:1 behavior management paraprofessional and a comprehensive delineation of academic and social and emotional needs to provide guidance.  Bergier, who has worked with autistic children in that model, described it as characterized by specific routines, visual schedules and visual reminder and believed that the  program is appropriate (T. 197, 216) She testified that McCarton staff agreed that a small class is appropriate.

The parents make several claims in challenging the CSE's recommendation.  With regard to the claim that the student requires ABA instruction and the IEP should have provided it, I note that  although an IEP must provide for specialized instruction in the student's areas of need, a CSE is not required to specify methodology on an IEP but rather that is left to instructional staff. See *Application of the XXX Department of Education*, Appeal No. 09-092  Further, the CSE has provided a program requiring many of the techniques that Gerhardt described as essential to ABA including data collection, frequent review of the data, prompting and fading, repetition and reinforcement.  (T. 106-110, 117, 122-127, 150-152)

The parents also claim that the 1:1 support that the student will receive is inadequate to meet his needs.  However, the student will have a full time behavior management para. Sencion persuasively testified as to how 1:1 instruction may be provided in a classroom by the teacher as needed and then reinforced by a paraprofessional. While the parents might believe that a para lacks necessary skills, I note that paras may have varying skills and experience but are supervised and instructed and supervised by the teacher. (T. 155-156) Although Gerhardt testified that that the student would not make any progress in the TEACCH 6:1:1 program, I note that he was not asked to opine about the effect of the addition of a full time para. (T. 371) It is also noteworthy

Hearing Officer's Findings of Fact and Decision                                    20

Case No. 133658

that Foglia, the student's teacher, when asked about a 6:1:1 class would say only that there was no data to show that he would make progress. (T. 547)

Although the parents claim that the goals were structured in contemplation of 1:1 ABA and are not otherwise appropriate, Bergier testified persuasively that the goals were appropriate with the program proposed. I also note that Sencion described how she could have met the goals with the strategies in the IEP and utilizing TEACCH methodology. (T. 150-151) I conclude that the goals correspond to and are aligned with the student's identified needs and skill deficits and that they are not methodology dependent.

The parents also claim that the IEP is substantively defective because it fails to properly address the student's transition difficulties with a transition plan. As discusse above a transition plan is not required on an IEP. Moreover, Bergier testified that the 1:1 para would help the transition from the McCarton program. (T. 211) Moreover, the IEP's BIP provided strategies for dealing with the student's needs for predictability. (T. 202-204) I note that there have been changes in the staffing of the class configuration and the staffing at McCarton but Gerhardt testified that he had not seen the occasional outbursts previously reported when the student's circumstances changed. That suggests that appropriate management techniques are effective in addressing or forestalling this problem. I also note Kanter's testimony that the student is usually very redirectable. (T. 547-548)

Accordingly, I conclude that the DOE has established that the program it offered was reasonably calculated to enable meaningful gains. It may be that some other program would enable better progress but it is well established that the DOE is not therefore required to provide it.

With regard to the placement, I make the following findings and conclusions: I find that the DOE had a place available for this student in the recommended school on the first day of school. Although there are inconsistencies in the testimony of Ortiz and Sencion concerning this issue, I find that irrelevant when the offered placement was available. That the DOE may have also offered it to others, if that is the case, is similarly not relevant. (Ex. *I*)

Hearing Officer's Findings of Fact and Decision                                    21

Case No. 133658

—————————————————————————————————————————————————

 Further, I find that the evidence shows that the placement was appropriate both for the two month summer program and for the remainder of the school year. Accordingly, I do not address the DOE's claim that it is not required to present any evidence with regard to the placement once the parents have rejected it. I find, however, that the DOE was not required to present evidence concerning this student's classroom configurations for that part of the program beginning in September with regard to staffing or student functioning levels. I note that would be entirely speculative since the student was not in the program and the September classroom determinations were made with no expectation of his arrival. With regard to the Summer program, I conclude that the evidence shows that the student would have been appropriately grouped and that the classroom was adequately staffed.

 A fair reading of Sencion's testimony shows that she was describing the TEACCH program and how it operates in the recommended school whether in the summer or later. Based upon that testimony, as well as the testimony of Ortiz, I find that the TEACCH program is followed in the school, that supervision and assistance with regard to implementation is provided, that the program utilizes the management techniques specified in the IEP as necessary for this student to make gains, that the behavioral strategies specified in the BIP can be implemented, that parent training and counseling is provided and that the related services mandates would be implemented.

 Based upon the foregoing, I find that the DOE has established that the IEP was properly developed and that the program and placement it offered was reasonably calculated to enable the student to make meaningful educational gains. Further, I find that the evidence shows that the parents were afforded meaningful participation in the CSE process. Accordingly, the DOE has established that it provided a FAPE. Therefore, I do not address the parties' various Prong 2 and Prong 3 claims.

## ORDER

 This matter is DISMISSED.

Hearing Officer's Findings of Fact and Decision                                    22

Case No.  133658

Dated:  January 30, 2012


JUDITH SCHNEIDER, ESQ.
Impartial Hearing Officer

Hearing Officer's Findings of Fact and Decision                          23

Case No. 133658

_____

## PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Hearing Officer's Findings of Fact and Decision                    24

Case No. 133658

---

## DOCUMENTATION ENTERED INTO THE RECORD

### PARENT

| | |
|---|---|
| A | Amended Demand for Due Process, 7/27/11, 11 pages |
| B | Demand for Due Process, 6/30/11, 10 pages |
| C | Finding of Fact and Order, 8/18/11, 10 pages |
| D | DOE IEP, 5/19/11, 29 pages |
| E | Amended Due Process Response by DOE, 8/24/11, 5 pages |
| F | Amended Due Process Response by DOE, 8/30/11, 5 pages |
| G | Due Process Response from DOE, 7/7/11, 5 pages |
| H | Letter to Mr. Donogan Re: Resolution Meeting Notices, 7/22/11, 4 pages |
| I | Final Notice of Recommendation, 6/15/11, 1 page |
| J | Letter to Region 9, 6/15/11, 3 pages |
| K | Notice of IEP Meeting 5/19/11, 2 pages |
| L | Occupational Therapy Evaluation McCarton, Debra McGuire, 8/15/11, 6 pages |
| M | Occupational Therapy Evaluation McCarton , Debra McGuire and Nipa Bahndari, 1/12/11, 8 pages |
| N | Speech and Language Progress Report McCarton, Alana Laios 7/2011, 5 pages |
| O | Speech and Language Progress Report McCarton, Alana Laios and Mark Kanter, 1/2011, 4 pages |
| P | Educational Progress Report McCartonl, Aleida Ward and Steve Falcon 1/25/11, 7 pages |
| Q | Meeting Minutes McCarton School 8/8/11, 2 pages |
| R | Addendum McCarton School 8/8/11, 1 page |
| S | Graphs and Data McCarton School 7/8/11, 26 pages |
| T | Curriculum Components Overview McCarton School, 6/20/11, 15 pages |
| U | Instructional Program McCarton School 1/18/11, 2 pages |
| V | Upper School Mission Statement McCarton School, Undated, 1 page |
| W | Information on McCarton School, Undated, 1 page |
| X | Attendance Record McCarton School, 2011-2012, 1 page |

Hearing Officer's Findings of Fact and Decision                                25

Case No. 133658

| | |
|---|---|
| Y | Sample of Elias's Day McCarton School, Undated, 2 pages |
| Z | Staff Meeting Attendance McCarton School, 9/8/11, 1 page |
| AA | Team Meeting Minutes McCarton School, 7/14/11, 1 page |
| BB | Class Profile, 2011-2012, 1 page |
| CC | Daily Schedule McCarton School, 2011-2012, 1 page |
| DD | Staff List McCarton School, 2011-2012, 1 page |
| EE | Anthony J. Foglia Resume, 3 pages |
| FF | Jacob Sadaboy Resume, 2 pages |
| GG | WITHDRAWN |
| HH | WITHDRAWN |
| II | WITHDRAWN |
| JJ | Chigusa Haldeman Resume & Certificate |
| KK | Helen Bloomer CV & Certificate, 3 pages |
| LL | Peter Garhardt Curriculum Vitae, 25 pages |
| MM | Mark Kanter Resume, 2 pages |
| NN | WITHDRAWN |
| OO | Panagiotis Rekoutis Resume, 7 pages |
| PP | Enrollment Contract McCarton School, 4/19/11, 3 pages |
| QQ | Affidavit McCarton School, 2011-2012, 1 page |
| RR | Invoice McCarton School 7/1/11, 1 page |
| SS | Parent Letter to IHO Re: Objection to Subpoenas, 8/31/11, 2 pages |
| TT | Special Education Service Delivery Report, 09-2010, 10-2011, 2 pages |
| UU | Organization Directory District 75 M-79, 2010, 3 pages |
| VV | WITHDRAWN |
| WW | Behavior Assessments, May 2011, 2 pages |
| XX | Behavior Intervention Plans, May 2011, 2 pages |
| YY | TEACCH Methodologies DOE, Undated, 3 pages |
| ZZ | BA Methodologies DOE, Undated, 3 pages |
| AAA | Paraprofessional Qualifications, Undated, 2 pages |

Hearing Officer's Findings of Fact and Decision                        26

Case No. 133658

---

BBB    WITHDRAWN

CCC    District 75 Placement Office Referral Form Blank, Undated, 2 pages

DDD    Jose P Stipulation, 7/28/88, 69 pages

EEE    WITHDRAWN

FFF    Curriculum Vitae, Anthony Foglia, undated , 3 pages

GGG    2011-2012 McCarton School IEP, 10/7/11 & 10/10/11, 9 pages

HHH    WITHDRAWN

III    D-75 Referral Form CSE 5/19/11 Review, 1 page


## DEPARTMENT OF EDUCATION

1      IEP, 5/19/11, 29 pages

2      IEP Rationale, 5/19/11, 3 pages

3      Level I Vocational Interview 5/19/11, 1 page

4      12-Month School Year Consent Form 5/19/11, 1 page

5      Notice to Parents 9/29/10, 1 page

6      Notice of IEP Meeting 5/19/11, 1 page

7      FNR, 6/15/11, 1 page

8      Educational Progress Report 1/25/11, 7 pages

9      McCarton IEP, 2010-2011, 9 pages

10     Positive Behavior Support Plan 9/2010, 1 page

11     Untitled Document Containing Information Regarding Behaviors, Undated, 1 pg.

12     McCarton Speech and Language IEP Goals, June 2010, 7 pages

13     McCarton Speech and Language Progress Report, January 2011, 4 pages

14     McCarton OT Goals, 9/2010, 2 pages

15     McCarton OT Evaluation Report 1/12/11, 8 pages

16     Classroom Observation, 12/6/10, 1 page

17     Email Correspondence Re: Scheduling 8/16/11, 1 page

18     DOE Subpoena to Parent, 9/7/11, 3 pages

19     DOE Subpoena to McCarton 9/8/11, 5 pages

Hearing Officer's Findings of Fact and Decision                    27

Case No. 133658

20    DOE Brief Re: Objections to Parent's Subpoena, 9/8/11, 7 pages
21    Letter from Parents to CSE 6/15/11, 1 page
22    Letter from Parents to CSE 6/24/11, 2 pages

IMPARTIAL HEARING OFFICER

I      Letter Motion from Parent 12/5/11, 10 pages  and  Exhibits A and B
II     DOE Opposition to Parents Letter Motion, e-mail dated 12/9/11, 5 pgs.
III    Compliance Date Extension Documentation, various dates, 4 pgs.
IV     Parents' Closing Memorandum
V      DOE's Closing Memorandum
VI     Memo re Prehearing Conferences dated 9/8/11, 1 pg.
VII    Interim Order on Pendency, 10/11/11, 5 pgs.